IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CRISANTO LAGASCA ROMERO,<br><br>Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>Defendant. | Civ. No. 22-00143 JMS-WRP<br><br>ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S FINDING OF NOT DISABLED |

ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S FINDING OF NOT DISABLED

I.  INTRODUCTION

Plaintiff Crisanto Lagasca Romero ("Claimant") seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Acting Commissioner of Social Security, Kilolo Kijakazi (the "Commissioner").  The Commissioner adopted Administrative Law Judge Jesse J. Pease's ("ALJ") March 3, 2021 written decision finding Claimant not disabled ("ALJ's Decision").  Claimant argues the ALJ committed legal error in: (1) failing to give specific, clear and convincing reasons to reject Claimant's testimony that he cannot stand and walk for six hours of an eight-hour workday; and (2) failing to give legitimate reasons supported by substantial evidence to reject the prior administrative medical findings.  ECF No.

11 at PageID.714.  Claimant asserts that neither error is harmless and that either error is sufficient to support remand to properly consider his testimony as well as the prior administrative medical findings.

The court disagrees.  The ALJ found that the objective medical evidence was inconsistent with Claimant's subjective testimony and supported his rejection of said testimony—and determination of not disabled—with specific, clear, and convincing reasons.  Furthermore, if there was a legal error, it was harmless because it did not affect the nondisability determination.  Accordingly, as discussed below, the court AFFIRMS the ALJ's Decision.

## II.  **BACKGROUND**

### A.    **The ALJ's Findings and Decision**

On October 12, 2018, Claimant applied for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416, 423, based on back injury, type 2 diabetes, high blood pressure, and high cholesterol. Administrative Record ("AR")[1] 129–32, 149.  Claimant alleges disability as of July 8, 2016.  AR 149.

The Social Security Administration has established a five-step sequential analysis to assess disability claims, which asks:

---

[1] The AR is numbered sequentially from pages 1 to 661 and is available at ECF Nos. 9-1 to 9-10.

(1)     Has the claimant been engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)     Has the claimant's alleged impairment been sufficiently severe to limit his ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)     Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, determine the claimant's residual functional capacity in preparation for step four.

(4)     Does the claimant possess the residual functional capacity to perform his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.[2]

*See, e.g.*, *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (noting that recent changes to the Social Security regulations did not affect the familiar "five-step sequential evaluation process," and citing 20 C.F.R. § 404.1520(a)(1) (disability insurance benefits)).  For steps

---

[2] A claimant is "disabled" for purposes of the Social Security Act if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

one through four, the burden of proof is on the claimant, and if "a claimant is

found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need

to consider subsequent steps." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

1999).  If the claimant reaches step five, the burden shifts to the Commissioner.  *Id*.

At Step 1, the ALJ found that Claimant has not engaged in substantial

gainful activity since July 8, 2018, the alleged onset date of alleged disability.  AR

18 (citing 20 C.F.R. § 404.1571 et seq. (regarding substantial gainful activity)),

129.

At Step 2, the ALJ found that Claimant had these severe impairments:

multilevel degenerative changes of the lumbar spine, with disc bulging;

hypertension; diabetes mellitus; history of obesity; obstructive sleep apnea; joint

space narrowing of the right shoulder; mild degenerative changes of the cervical

spine.  *Id*. (citing 20 C.F.R. § 404.1520(c) (Evaluation of disability in general)).

The ALJ found Claimant's other impairments—hyperlipidemia, post-

uvulopalatopharyngoplasty,[3] gout, and kidney stones—as improved or abated and

thus non-severe.  AR 19.

At Step 3, the ALJ found that Claimant did not have an impairment or

combination of impairments that meets or medically equals the severity of § 1.04

---

[3] An uvulopalatopharyngoplasty is a procedure that treats obstructive sleep apnea.  *See* Uvulopalatopharyngoplasty, https://pubmed.ncbi.nlm.nih.gov/33581977/ (last visited January 20, 2023).

for disorders of the spine in 20 C.F.R Part 404, Subpart P, Appendix 1. *Id.*

Disorders of the spine is defined in relevant part as:

> (. . . spinal arachnoiditis, spinal stenosis, . . . degenerative disc disease . . .) resulting in compromise of a nerve root (including the cauda equina) or spinal cord. With: (1) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine) . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. In preparation for Step 4, the ALJ

considered the evidence and Claimant's statements about the intensity, persistence,

and limiting effects of his symptoms, as consistent with objective medical evidence

under 20 C.F.R. § 404.1529 (How we evaluate symptoms, including pain) and

Social Security Ruling 16-3p (Evaluation of Symptoms in Disability Claims).[4] In

addition, the ALJ considered medical opinions and prior administrative medical

findings pursuant to 20 C.F.R. § 404.1520c (How we consider and articulate

medical opinions and prior administrative medical findings for claims filed on or

after March 27, 2017).

The ALJ accordingly derived Claimant's residual functional capacity

---

[4] "Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, . . . and are to be relied upon as precedents in adjudicating cases." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (citation omitted).

"for light exertion . . . lifting, carrying pushing and pulling 10 pounds frequently and 20 pounds occasionally, and standing and walking for 6 hours out of 8 and sitting 6 hours of 8." AR 21. In addition, the ALJ imposed "restrictions to occasional postural activities; and occasional stairs and ramps, but no ladders, ropes, or scaffolds," and as a precaution, "an additional restriction of occasional hazardous machinery and unprotected heights," AR 24, to "accommodate the claimant's subjective complaints to the extent consistent with the record as a whole." AR 23.

At Step 4, the ALJ found Claimant unable to perform any past relevant work as a maintenance machine repairer. AR 24. Finally, at Step 5, the ALJ considered Claimant's age, education, work experience, and residual functional capacity to find that there are jobs that exist in significant numbers in the national economy that Claimant can perform, such as marker, photocopy machine operator, and furniture rental clerk. AR 25 (citing 20 C.F.R. §§ 404.1569, 404.1569(a) (Listing of Medical-Vocational Guidelines)). The ALJ thus concluded at Step 5 that Claimant is not disabled. *Id*.

**B.      Procedural Background**

On June 28, 2019, the Commissioner denied Claimant's claim and on January 24, 2020, denied the claim on reconsideration. AR 61–71,72–75. Claimant timely requested a hearing that took place on February 11, 2021, at which

Claimant and vocational expert, Sugi Komarov, testified.  AR 31–48.  On March 3,

2021, the ALJ issued his written decision finding Claimant not disabled.  AR 16–

26.  The Appeals Council denied Claimant's request for review on February 2,

2022, which rendered the ALJ's Decision the final decision of the Commissioner.

AR 1–7.  Claimant commenced his action for judicial review on April 4, 2022.

ECF No. 1.

Claimant filed his Opening Brief on October 7, 2022.  ECF No. 11.

The Commissioner filed an Answering Brief on November 21, 2022.  ECF No. 12.

Claimant filed a Reply Brief on December 5, 2022.  ECF No. 13.  The court held

oral argument on January 9, 2023.  ECF No. 14.

### III.  <u>STANDARDS OF REVIEW</u>

Congress has provided a limited scope for judicial review of the

Commissioner's decision to deny benefits under the Social Security Act.  *See* 42

U.S.C. § 405(g).  "For highly fact-intensive individualized determinations like a

claimant's entitlement to disability benefits, Congress places a premium upon

agency expertise, and, for the sake of uniformity, it is usually better to minimize

the opportunity for reviewing courts to substitute their discretion for that of the

agency."  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir.

2014) (internal quotation and citation omitted).

Guided by this principle, courts employ "three important rules" when assessing an ALJ's decision.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (2015).  First, courts "'leave it to the ALJ to determine credibility,[5] resolve conflicts in the testimony, and resolve ambiguities in the record.'"  *Id*. (quoting *Treichler*, 775 F.3d at 1098).  Second, courts will "disturb the Commissioner's decision to deny benefits 'only if it is not supported by substantial evidence or is based on legal error.'"  *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  Substantial evidence means "more than a mere scintilla but less than a preponderance[;] it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Gutierrez v. Comm'r of Soc. Sec*., 740 F.3d 519, 522 (9th Cir. 2014) (internal quotation and citation omitted).  If the evidence is "susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."  *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  And third, even where the ALJ commits legal error, courts uphold the ALJ's decision if that error is harmless.  *Brown-Hunter*, 806 F.3d at 492.  An error is harmless if it is "'inconsequential to the ultimate nondisability determination'" or if "despite the legal error, 'the

_____

[5] Effective March 27, 2017, the Social Security Administration eliminated use of the term "credibility" from its sub-regulatory policy, clarifying that "subjective symptom evaluation is not an examination of an individual's character," but "rather is an evidence-based analysis of the administrative record to determine whether the nature, intensity, frequency, or severity of an individual's symptoms impact his or her ability to work."  Soc. Sec. Ruling 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 FR 14166-01 ("SSR 16-3p").

agency's path may reasonably be discerned, even if the agency explains its

decision with less than ideal clarity.'"  *Id*. (quoting *Treichler*, 775 F.3d at 1099).

Nevertheless, "[a] clear statement of the agency's reasoning is

necessary because we can affirm the agency's decision to deny benefits only on the

grounds invoked by the agency." *Brown-Hunter*, 806 F.3d at 492 (citation

omitted).  Consequently, "a reviewing court may not make independent findings

based on the evidence before the ALJ to conclude that the ALJ's error was

harmless." *Id*. (citing *Stout*, 454 F.3d at 1054); *see also Marsh v. Colvin*, 792 F.3d

1170, 1172 (9th Cir. 2015) (stating that a district court may not find harmless error

by "affirm[ing] the agency on a ground not invoked by the ALJ").

The court is instead constrained to review the reasons the ALJ asserts,

*Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), because "[i]f the ALJ fails

to specify his or her reasons for finding claimant testimony not credible, a

reviewing court will be unable to review those reasons meaningfully without

improperly 'substitut[ing] [its] conclusions for the ALJ's, or speculat[ing] as to the

grounds for the ALJ's conclusions.'" *Brown-Hunter*, 806 F.3d at 492 (quoting

*Treichler*, 775 F.3d at 1103) (some brackets in original).  Thus, "[b]ecause we

cannot engage in such substitution or speculation, such error will usually not be

harmless." *Id*.

## IV.  DISCUSSION

**A.    The ALJ Gave Specific, Clear and Convincing Reasons to Reject Claimant's Testimony That He Cannot Stand and Walk for Six Hours in an Eight Hour Workday**

"When objective medical evidence is inconsistent with a claimant's subjective testimony, an ALJ can 'reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so.'" *Smartt*, 53 F.4th at 494 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)).  "[A]n ALJ may not 'reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.'" *Id*. at 494–95 (quoting *Burch*, 400 F.3d at 681).

Furthermore, "[a] finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (citation and internal quotation marks omitted).  In fact, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation and internal quotation marks omitted); *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ

10

must specifically identify the testimony she or he finds not to be credible and must

*explain* what evidence undermines the testimony") (emphasis added); *cf. Johns v.*

*Berryhill*, 2019 WL 1453482, at *1 (D. Haw. Apr. 2, 2019) (reversing and

remanding Commissioner's decision because ALJ failed to properly "specifically

identify" and discuss Plaintiff's pain and symptom testimony in rejecting her

testimony and finding her not disabled).  Here, the ALJ's Decision met the

specific, clear and convincing standard.

> The ALJ summarized Claimant's written and testimonial allegations

on the conditions that affect his ability to work:

> low back and neck pain that interferes with activities including
> walking, standing, sitting, lifting and carrying. . . . He testified
> the pain prevents him from doing anything.  He stated he could
> walk 15-20 minutes before having to rest and stand for 10-15
> minutes, and he could sit about 20-30 minutes but has to move
> his feet up.  If he could not move his feet up, he could sit 30
> minutes but stated he has to move (his position), like move
> side-to-side or bend over.  He estimated he could carry maybe
> 25 pounds, but he would feel pain, and may be lift a 10-pound
> bag of rice or gallon of milk, and may be carry the same but is
> not sure for how long.  He testified he uses a CPAP for sleep
> apnea, and sometimes gets full night's sleep, but sometimes
> not, because he is awaken by pain.  He testified he also has joint
> pain in the right shoulder.  He testified that he lies down most
> of the day, 70% to 80% of the day due to his back, and that pain
> interferes with his ability to focus most of the time.

AR 20; *see also* AR 39–43 (hearing transcript), 165–72 (Claimant's function

report).  The ALJ found Claimant's medically determinable impairments could

reasonably be expected to cause his alleged symptoms.  However, the ALJ found

Claimant's statements about the intensity, persistence and limiting effects of these symptoms inconsistent with the objective medical evidence and other evidence in the record.[6]  AR 20; *see also* 20 C.F.R. § 404.1529; SSR 16-3p.

The ALJ found Claimant's symptoms less likely to reduce his ability to perform work-related activities because "if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities."  SSR 16-3p.  In so doing, the ALJ cited specific, clear and convincing evidence that Claimant is more capable than his alleged symptoms suggest.

The ALJ noted medical documentation of "complaints of chronic back radiating to the lower extremities, and neck pain, with underlying orthopedic pathology seen on objective imaging of multilevel degenerative changes of the lumbar spine, with disc bulging; mild degenerative changes of the cervical spine; and joint space narrowing of the right shoulder."  AR 20.  Notwithstanding, the ALJ credited Claimant's treating physicians, Ken C. Arakawa, M.D., and Michael

---

[6] Objective medical evidence consists of signs or laboratory findings.  SSR 16-3p.  "*Signs* are anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms."  *Id*. (footnote omitted).  "*Laboratory findings* are anatomical, physiological, or psychological phenomena, which can be shown by the use of medically acceptable laboratory diagnostic techniques."  *Id*. (footnote omitted).

C. Nichols, M.D., for administering and documenting Claimant's "treatment primarily with medication and some injections and physical therapy." *Id.*; *see also Smartt*, 53 F.4th at 495 ("As long as a treating physician's opinion 'is well-supported . . . and is not inconsistent with the other substantial evidence in [the] case record, we will give it controlling weight.'" (quoting 20 C.F.R. § 404.1527(c)(2) (brackets in *Smartt*)).  Claimant has experienced "some improvement" with physical therapy, AR 230, as well as through pain injections administered by Dr. Nichols.  AR 327 (indicating pain level 5 on a scale of 1 to 10 (5/10) before injection, and 2–3 weeks of 1–2/10 pain, up to 4/10 pain).  Dr. Morita advised against lumbar surgery due to "an uncertain possible rheumatologic" condition, but noted that Claimant can "move[] all extremities well."  AR 21, 263–646.

The ALJ noted other inconsistencies in the objective medical evidence with Claimant's purported limitations.  In July 2018, Dr. Nichols noted that Claimant's then-status on leave from work allowed him to sit for most of the day, "which is his most comfortable position," in contrast with Claimant's assertion of only being able to sit 20 to30 minutes.  AR 21, 603.  In August 2018, Claimant reported "some relief" from treatment and a sore back at pain level 2/10, most likely caused by "working on his truck," which "required a lot of bending."  AR 21, 605.  That same month, performing yard work caused some pain (1–2/10) and

Claimant woke up with pain at 4–5/10.  AR 21, 607.  Claimant later cleaned his truck, causing 1–2/10 pain.  AR 21, 615.

In September and October 2018, Claimant displayed "decreased cervical and lumbar ranges of motion" and exhibited "an antalgic gait."  AR 21, 231–32, 64–65.  Within the same time frame, however, Dr. Nichols noted a normalized gait in subsequent examinations.  AR 21, 232, 326–51, 430–49.  Claimant's gait continued to fluctuate from normal in January 2019, to abnormal nearly one year later in December 2019, and slowed in March 2020.  AR 21, 372, 470, 472.  Nonetheless, Claimant "remain[ed] with intact strength in the lower extremities, without signs of atrophy on medical exams."  AR 21; *see, e.g.*, AR 430–49.  Dr. Nichols also noted "negative straight leg raises bilaterally when seated, in addition to normal gait and/or station," as well as a "non-tender spine, with intact range of motion although with pain; and normal muscle strength and intact light sensation."  AR 21.

Likewise, the ALJ found Claimant's activities of daily living were inconsistent with his alleged symptoms.  "An ALJ may . . . consider 'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'"  *Smartt*, 53 F.4th at 499 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)).  Despite Claimant's assertion that his pain "prevents him from doing anything," AR 20, 39, his activities of daily living demonstrate otherwise.  These

14

include: preparing meals; walking; exercising; stretching; watching television;

listening to the radio; washing the car; picking up leaves and "branches of trees" in

his yard; and driving a car up to three times a week to grocery shop. AR 21, 166,

168, 607. Claimant additionally has no problems in his daily personal care. AR

21, 166.

At oral argument, Claimant argued the ALJ misapprehended

Claimant's testimony in writing, "[Claimant] testified that he lies down most of the

day, 70% to 80% of the day due to his back," AR 20; in fact, Claimant actually

testified to lying down 50% to 80% of the day. AR 43; ECF No. 11 at PageID.716.

But because Claimant failed to fully and specifically argue this point in his opening

brief—having only mentioned the fact of the discrepancy in a footnote—the court

considers this argument waived. *See Wagner v. Cnty. of Maricopa*, 747 F.3d 1048,

1059 (9th Cir. 2013) (determining that "[s]uch a deficiency waives the issue")

(N.R. Smith, J., dissenting); *see also Martinez-Serrano v. I.N.S.*, 94 F.3d 1256,

1259 (9th Cir. 1996) ("[A]n issue referred to in the appellant's statement of the

case but not discussed in the body of the opening brief is deemed waived."). Even

if Claimant had not waived this point, the court finds that whether Claimant had

lain down for half a day or up to most of the day, this allegation remained

inconsistent with Claimant's reported activities of daily living, as noted by the

ALJ. Any error was harmless.

15

The ALJ also found inconsistencies between the objective medical evidence and Claimant's assertion that pain interferes with his ability to focus and concentrate. Dr. Nichols noted Claimant's "capacity for sustained mental activity to be 'within normal limits,' and that he was alert, awake and well oriented" on multiple treatment visits 2018–2020. AR 21, 326–51, 430–49. Besides his activities of daily living, Claimant could pay bills, count change, and handle his own bank accounts. He reported no difficulties focusing and can finish what he starts and follow written instructions. AR 21, 168–70.

Claimant argues that the ALJ failed to consider the side effects of his medication, in contravention of SSR 16-3p. ECF No. 11 at PageID.722–25; *see also* 20 C.F.R. § 404.1529(c)(3) (noting side effects of any medication as among relevant factors in considering a claimant's symptoms). The court, too, notes that the ALJ did not discuss Claimant's reaction to certain pain medications, only that he took medication for his diabetes and gout, AR 19, 22, and noting testimony that "medications lessen his pain." AR 20. Nonetheless, the court finds this error to be harmless because it is "'inconsequential to the ultimate nondisability determination.'" *Brown-Hunter*, 806 F.3d at 492. Overall, the ALJ did not rely solely on any one inconsistency, nor did he fail to articulate specific reasons and show clear and convincing evidence in rejecting Claimant's asserted symptoms. *See* SSR 16-3p.

**B.      The ALJ Did Not Err in Rejecting Dr. Shibuya's and Dr. Matsuno's Prior Administrative Medical Findings**

State agency medical consultants, Neil Shibuya, M.D., and Wendy Matsuno, M.D., reviewed Claimant's medical records and "assessed a capacity for light exertion . . . lifting and carrying 10 pounds frequently and 20 pounds occasionally," and "limiting standing and walking to 4 hours out of 8."  AR 23, 55–57.  The ALJ found their opinions unpersuasive as inconsistent with their findings and with other medical evidence demonstrating normal strength and improvement with physical therapy.  AR 23.  For example, Drs. Shibuya and Matsuno permitted frequent reaching with the right dominant arm, but in contraindication to their findings of degenerative joint change in the shoulder.  *Id.*

Claimant asserted at oral argument that the ALJ committed error in disregarding the objective medical evidence limiting Claimant to standing and walking 4 hours out of 8 hours, and that Dr. Nichols never assessed how much Claimant could stand and walk.  It was not Dr. Nichols' task, however, to make such an assessment.  Rather "it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545).  Claimant has not shown how the ALJ's failure to gather more information from his treating physicians prejudiced Claimant absent any evidence that the ALJ's Decision would have changed if he had done so.  The error, if any, is thus harmless.

17

Moreover, the ALJ, although not required, provided specific reasons for finding Drs. Shibuya's and Matsuno's opinions unpersuasive.  The ALJ need not adhere to the "clear and convincing" standard because they never treated or examined Claimant.  *See* 20 C.F.R. § 404.1527(c)(1)–(2) (providing an ALJ must give more weight to opinions from treating or examining physicians); 20 C.F.R. § 404.1527(c)(3)–(4) (providing an ALJ must consider whether each opinion is supported by evidence and consistent with the record); *see also Farlow*, 53 F.4th at 488 ("Opinions from treating physicians receive more weight than opinions from examining physicians, and opinions from examining physicians receive more weight than opinions from non-examining physicians.").

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

18

## V.  CONCLUSION

The ALJ's Decision was supported by specific, clear and convincing evidence to reject Claimant's testimony, and the inconsistencies in the objective medical evidence provided a sufficient basis to reject the prior administrative medical findings in the ALJ's ultimate finding of not disabled.  Accordingly, the ALJ's Decision is AFFIRMED.  The Clerk of Court is directed to close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 20, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Romero v. Kijakazi*, Civ. No. 22-00143 JMS-WRP, Order Affirming Administrative Law Judge's Finding of Not Disabled